# Exhibit A

# **PLAYER MARKETING AGREEEMENT**

This Agreement entered into this 27th day of November, 2023 (the "Effective Date") by and between Hazan Sports Management Group Inc ("Marketing Agent") a New York corporation having its principal place of business at 1775 York Ave, New York, NY 10128 and Malik Beasley (herein "Player") and collectively, (the "Parties"), residing at 14724 Ventura Blvd STE 401, Sherman Oaks, CA 91403, sets forth the terms, conditions, responsibilities, and expectations of the Parties as it relates to Marketing Agent serving as Player's sole and exclusive representative for the monetization of Player's Rights of Publicity (as defined herein).

**WHEREAS**, Player is a professional basketball player in the National Basketball Association ("NBA") and desires to earn compensation and other benefits for the use of his Rights of Publicity (as defined below);

**WHEREAS,** Marketing Agent is skilled and has experience in the marketing of and securing commercial opportunities for professional athletes ;

**WHEREAS,** Player desires to obtain professional services from Marketing Agent and Marketing Agent is willing to provide such services as outlined in this Agreement below;

**WHEREAS,** Player warrants and represents that his sole motivation and inducement with respect to entering into this Agreement is Marketing Agent's skill, experience, and record with respect to marketing and monetizing athletes' rights of publicity;

Now, Therefore, in consideration of the mutual covenants, terms, and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Appointment and Services.

    (a) Appointment. Commencing as of the Effective Date, Player hereby appoints Marketing Agent as Player's sole and exclusive representative for the marketing or representation for any use of his attributes, including, but not limited to, his name, image, likeness, signature, voice, character and for personal appearances (collectively "Rights of Publicity") throughout the world. Player agrees to provide Marketing Agent with a non-exclusive, sublicensable, royalty-free, paid-in-full license to Player's Rights of Publicity to make use of in connection with Marketing Agent's representation of Player. Marketing Agent shall be the *sole and exclusive* party authorized to develop, negotiate, organize and administer any and all income-producing activities available to Player for use of his Rights of Publicity, including but not limited, to licensing, endorsements, personal appearances, television, film, modeling and fashion, literary and musical activities, special events, multi-media and social media (hereinafter "Marketing Activities").

    (b) Services. During the Term of this Agreement, Marketing Agent may, during the course of its marketing duties, entertain and solicit any offers, which are presented and advise Player as to the benefits or consequences of such opportunities. Marketing Agent shall be available to provide Player with advice for Player with respect to the development, negotiation, organization and administration of Player's Marketing Activities that Player may require from time to time. Marketing Agent will provide advice in connection with Player's marketing opportunities by



telephone or in conferences and will write any correspondence incidental to this purpose.

2. Marketing Advance. Marketing Agent agrees to pay a one-time Marketing Advance in the amount of $650,000 (six hundred thousand USD) ("Marketing Advance"), and paid directly to Player, subject to all applicable tax reporting and withholding requirements. In consideration for the Marketing Advance, Player agrees that Marketing Agent shall be entitled to 100% of all Gross Earnings generated with respect to this Agreement until it has recouped the full amount of the Marketing Advance. Once Marketing Agent has recouped the full amount of the Marketing Advance, Marketing Agent shall only be entitled to earn Commission as set forth in Section 3 of this Agreement. Marketing Agent agrees to remit a portion of the Marketing Advance equal to $100,000 (one hundred thousand USD) (the "Initial Payment") to Player upon execution of this Agreement. The Initial Payment shall be deemed to have been received upon Player's execution of this Agreement. Thirty percent (31%) of the Marketing Advance, which for the avoidance of doubt totals $200,000 (two hundred thousand USD) shall be remitted to Player fifteen (15) days after the execution of this Agreement and the remaining 54% shall be remitted to player in eight (8) equal monthly installments of $43,750 (thirty-one thousand two hundred fifty USD) beginning in January 2024 ("Installment Payments"). Marketing Agent at its sole discretion may elect to withhold or delay the payment of Installment Payments to Player for any reason it sees fit. Marketing Agent shall reserve the right but in no way shall be obligated to increase the overall amount of the Marketing Advance and/or the Installment Payments.

Notwithstanding the foregoing, Player acknowledges and accepts that if this Agreement is terminated for any reason (a "Termination Event") Player shall be required to pay the Marketing Agent liquidated damages in the amount of $1,000,000 (one million USD) (the "Liquidated Damages Amount") along with any marketing fees due and payable under this Agreement to the Marketing Agent within thirty (30) days of such Termination Event without reduction for any taxes withheld by the Marketing Agent upon its payment to Player of the Marketing Advance. The Parties agree that the Liquidated Damages Amount is fair and acceptable in light of the amount of the Marketing Advance and the risk assumed by Marketing Agent with respect to the Marketing Advance.

3. Commission. (a) As compensation for the above services, Marketing Agent shall be paid a percentage of all amounts (the "Commission") received by or payable to or for the benefit of Player or any entity controlled by Player, reduced only by the Expenses otherwise payable to Agent hereunder (the "Gross Earnings") from contracts, engagements, and/or any other transactions entered into during the Term of this Agreement and any extensions, renewals or resumptions thereof, for all Marketing Activities, regardless of whether Marketing Agent was involved in the negotiation or renegotiation of such Marketing Activities. The Commission shall be twenty percent (20%) of Gross earnings and shall be payable on or before the 15th day after the end of the month in which the Gross Earnings were payable to Player (the "Due Date"). In the event that Player fails to remit the Commission within ten (10) days of the Due Date, a late fee of 5% per annum shall accrue for each subsequent day that the Commission has not been received by Marketing Agent. Gross Earnings shall also be defined to include any non-cash compensation Player may receive, which includes but is not limited to stock, stock options, tokens, or any other form of value that Player may receive in connection with an agreement facilitated by Marketing Agent.

4. Expenses. All expenses incurred by the Marketing Agent toward the execution of any Marketing Activities or in general service of, to, or on behalf of Player shall be deemed to be an additional advance by Marketing Agent and shall be recoverable by Marketing Agent if this Agreement is terminated for any reason ("Expenses"). Nonetheless, if this Agreement is terminated for any reason prior to the negotiation by Marketing Agent of any contract for the Player that allows Marketing Agent to recoup the Marketing Advance and Expenses identified herein, the Expenses incurred by Marketing Agent shall be added to the Liquidated Damages Amount.

5. Term and Termination. The initial term of this Agreement shall be for a period of four (4) years




commencing upon the Effective Date (the "**Initial Term**"). *UPON THE COMPLETION OF THE INITIAL TERM, THIS AGREEMENT SHALL AUTOMATICALLY RENEW FOR SUCCESSIVE, ONE YEAR TERMS (EACH A "RENEWAL TERM"), UNLESS, AT LEAST 60 DAYS PRIOR TO THE BEGINNING OF A RENEWAL TERM, ONE OF THE PARTIES DELIVERS WRITTEN NOTICE TO THE OTHER PARTY OF ITS INTENT TO PREVENT THE RENEWAL OF THIS AGREEMENT.* The Initial Term and the Renewal Term together are the "**Term**".

Marketing Agent shall reserve the right to terminate this Agreement at any time with or without cause by providing Player with five (5) days' prior written notice. This Agreement may also be terminated by either Party as a result of a material breach committed by the Other Party that is not cured within thirty (30) days of the allegedly breaching party receiving notice of said breach.

In the event that Marketing Agent has not fully recouped the Marketing Advance prior to the effective date of Termination of this Agreement, Player shall be required to remit the Liquidated Damages Amount as well as any Expenses incurred by Marketing Agent with respect to this Agreement to Marketing Agent within thirty (30) days from the effective date of termination.

6. Subsequent Agreements. If any agreement regarding or involving Player's Marketing Activities is executed during the Term, and Player enters into any additional written or oral agreement with the same sponsor, contact or other counterparty (or any affiliate or subsidiary thereof) within twelve (12) months from the date the first contract expires, the Player will pay Marketing Agent twenty percent (20%) of the total gross amount of received by or payable to Player under such subsequent agreement. In addition, upon the expiration or termination of this Agreement, the Player will pay Marketing Agent (a) all amounts due but unpaid under Section 2 of this Agreement; plus (b) Player reasonable compensation for any services rendered up to the date of the termination of this Agreement, including both its (i) negotiations with any third party on behalf of Player and (ii) twenty percent (20%) of all amounts received by or for the benefit of Player under any contracts, engagements and/or other transactions executed by Player with a third party within 90 days after the date of termination.

7. Indemnity.

7.1.   Player shall indemnify, and hold Marketing Agent, and Marketing Agents representatives, employees, and partners harmless for any and all costs, expenses and damages (including reasonable attorney's fees) sustained by Marketing Agent as the result of any (i) breach or alleged breach of this Agreement by Player, (ii) any act or obligation created, performed or breached by Player prior to the effective date of this Agreement, or (iii) any claims by third parties alleging a breach of an agreement or obligation entered into by Player prior to the execution of this Agreement. Said indemnity shall apply to any obligation previously incurred but to be performed subsequent to the effective date of this Agreement.

7.2.   Player understands that Marketing Agent may during the term of this Agreement introduce Player to third parties for purposes of Player obtaining additional services, such as lawyers, accountants, financial consultants, and other third parties offering similar services. Player acknowledges that the Marketing Agent does not represent or warrant such third parties' services, and that Player may elect to retain or reject such third-party services in his sole and absolute discretion, based upon his own investigation. Player shall indemnify, defend, and hold Marketing Agent harmless for any and all losses sustained by Marketing Agent arising out of any claim related to such third-party services retained by Player.

7.3.   In order to be indemnified under any of Section 7.1, 7.2 or 7.3 the party to be indemnified must (a) promptly notify the other in writing of any such claim and give the other party the opportunity to defend or settle any such claim and (b) cooperates with the indemnifying party in defending or settling such claim.



8. <u>Notices</u>. Any notice required to be given under this Agreement shall be deemed delivered when the same is delivered by electronic mail, overnight courier or deposited in the United States mail by certified mail, postage prepaid, addressed to the other party at the respective addresses set forth below, or at such other address or addresses as may from time to time be designated by any party to the other party:

    If to Marketing Agent to:

        Hazan Sports Management Group Inc.

        1775 York Avenue

        New York, NY, 10128

    If to Player to:

        Malik Beasley

        14724 Ventura Blvd STE 401,

        Sherman Oaks, CA 91403

9. <u>No Conflicting Agreements</u>. Player warrants and represents that he has no agreement or understanding with any other party regarding its representation of Athlete for any purpose, and that he will not enter into any such agreement any time prior to the termination of the Term.

10. <u>Survival.</u> The covenants, agreements, representations, and warranties contained in or made pursuant to this Agreement shall survive the termination of Company's services hereunder.

11. <u>Complete Agreement</u>. This Agreement inclusive of the attached Addendum contains the entire understanding between the Parties and supersede, replace and take precedence over any prior understanding or oral or written agreement between the Parties respecting the subject matter of this Agreement. There are no representations, agreements, arrangements, nor understandings, oral or written, between the Parties relating to the subject matter of this Agreement that are not fully expressed herein.

12. <u>Severability and Interpretation</u>. It is intended that each provision of this Agreement shall be viewed as separate and divisible and that in the event that any provision shall be held invalid, the remaining provisions shall continue in full force and effect. It is further intended that in the event that any provision of this Agreement shall be held invalid because of its scope or duration, the court making such a determination shall have the power to limit the scope or duration of the provision in question and, in its limited form, such provision shall then be enforceable. This Agreement shall be construed and interpreted in the manner that will give the Agent the utmost protection and benefit.

13. <u>Non-Waiver</u>. This Agreement may not be amended, modified, superseded, or terminated in whole or in part except in writing executed by both the Player and the Agent. The failure of the Agent at any time to require performance of any provision of this Agreement shall in no way affect its right at a later time to enforce that provision. No waiver by the Agent of the breach of any provision of this Agreement shall be deemed to be or construed as a further or continuing waiver of such breach, or a waiver of the breach of any other provision contained in this Agreement.

14. <u>Section Headings</u>. The Section headings contained herein are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

*[handwritten initials: MB]*

*[handwritten initials: DH]*

15. Counterparts. This Agreement may be executed in two (2) signed counterparts, each of which shall constitute an original, but all of which taken together shall constitute one and the same instrument.

16. Governing Law; Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of laws of any jurisdictions other than those of the State of New York. Any and all disputes arising out of this Agreement shall be adjudicated by a New York state court of competent jurisdiction located in New York County or a federal court located in New York County, New York. Each Party irrevocably waives any objection it may now or hereafter have with respect to venue of disputes arising out of or in connection with this Agreement. In the event Marketing Agent is required to pursue adjudication of its rights with respect to this Agreement, Player agrees to pay any and all legal fees associated with such adjudication. For purposes of this Agreement, adjudication shall be construed broadly to include the retention of an attorney by Marketing Agent regardless of whether formal adjudicative proceedings are initiated.

18. Equitable Remedies. Player acknowledges and agrees that legal remedies may be inadequate to enforce the provisions of this Agreement and that equitable relief, including specific performance and injunctive relief, may be used to enforce the provisions of this Agreement. To the maximum extent allowable by law, Marketing Agent shall not be required to post bond in connection with pursuing any equitable remedies, including and especially injunctive relief.

19. Sole Inducement. Player warrants and represents that his sole inducement and motivation for entering into this Agreement is the skills, experience, and record of the Marketing Agent and Player's good faith belief that Marketing Agent is the best advocate for his interests relating to his Rights of Publicity.

20. Confidentiality. Both Parties agree to keep the existence of this Agreement and the terms contained herein strictly confidential.

21. Review By Counsel. Player acknowledges and accepts that he has had the opportunity to confer with counsel and/or has been instructed as to the advisability of doing so prior to entering into this Agreement.

22. Assignment. Player shall be restricted from assigning the rights or delegating the obligations of this Agreement without obtaining the express written consent of Marketing Agent. Marketing Agent shall be free to unilaterally assign any of its right(s) or obligation(s) with respect to this Agreement.

23. No Conflicting Agreements. Player warrants and represents to Marketing Agent that he is not bound by any other contract or agreement with a third party (a "Third Party Agreement") that would conflict with the terms of this Agreement or render him in breach of any Third Party Agreement. To the extent Player is bound by a Third Party Agreement and such agreement enables Player to terminate the Third Party Agreement, Player shall terminate such agreement prior to executing this Agreement.

24. Third Party Payee Designation. With respect to any revenue producing activities related to the commercialization of Player's right(s) of publicity, Player agrees to designate Marketing Agent as a third party payee with respect to such revenues or agreements pertaining to the commercialization of Player's right(s) of publicity.

25. Information Requests. In order to ensure that Player's personal financial situation and solvency do not impair Marketing Agents rights with respect to this Agreement, Player shall be required to submit to and comply with periodic requests by Marketing Agent to produce personal financial information such as bank statements, bills, expense reports, etc.

26. **Further Representation.** While Player is in no way obligated to engage Marketing Agent as his player agent with respect to the negotiation of his playing agreements with NBA teams, Player shall provide Marketing Agent with the exclusive opportunity to present Player with an offer or match an offer from another agent or agency to serve as Player's exclusive player agent. Player shall be obligated to provide Marketing Agent with advance notice of any conversations he plans to have with respect to the selection of a player agent. Player agrees to provide marketing agent with an exclusive three-week negotiating period prior to entering into an agreement with another player agent or agency prior for such agent or agency to serve as Player's player agent (the "Negotiation Window"). If the Parties are unable to reach an agreement for Marketing Agent to serve as Player's player agent during the Negotiation Window, Player shall be free to sign with a player agent of his choosing. For the avoidance of doubt, this section shall also apply if on his own volition Player selects Marketing Agent to serve as his player agent but elects to entertain the possibility of retaining a new or alternative player agent.

**IN WITNESS WHEREOF** the parties have executed this Agreement on the date and year first above written.

**Marketing Agent**
Hazan Sports Management Group Inc.

**Player**
Malik Beasley

BY: _____
Daniel Hazan, President

BY: _____
Malik Beasley, Player