**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HAZAN SPORTS MANAGEMENT GROUP, INC.,<br><br><br>Plaintiffs,<br><br>**v.**<br><br>MALIK BEASLEY,<br><br><br>Defendant. | **1:25-cv-03259-JAV-GS** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF HAZAN SPORTS MANAGEMENT GROUP, INC.'S MOTION FOR DEFAULT JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................................................i

TABLE OF AUTHORITIES ................................................................................................ii

FACTS.................................................................................................................................1

ARGUMENT .......................................................................................................................3

I. This Court Has Subject Matter Jurisdiction With Respect to This Case and Personal Jurisdiction Over The Parties……………………………………………………………….

II. New York Substantive Law Should Be Applied To This Case

III. A Default Judgment Should Be Entered Against Beasley For His Failure To Appear

IV. Beasley Breached The Marketing Agreement By Engaging Brian Jungreis of Seros Partners To Serve As His Marketing Agent In Violation of The Exclusivity Provisions of The Marketing Agreement.

V. Beasley Is Required to Pay HSM's Attorney's Fees Per The Terms of The Marketing Agreement

VI. An Inquest Is Unnecessary........................................................................................... 14

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

 *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938)...............................................................10

*Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, (2nd Cir. 1989………………………….16

*Harris v. Seward Park Hous. Corp.,* 79 A.D.3d 425, 913 N.Y.S.2d 161 (App. Div. 2010) ...........11

*Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 393 N.Y.S.2d 365, 361 N.E.2d 1015 (1977)**.**...............................................................................................................................................15


**Statutes**

28 U.S.C. § 1332................................................................................................................... 7, 8

28 U.S.C. § 1652....................................................................................................................13

N.Y. C.P.L.R. § 302 (a)(1).......................................................................................................9


**Rules**

Fed. R. Civ. P. 4……………………………………………………………………………… 8

Fed. R. Civ. P. 55……………………………………………………………………………4, 16

This memorandum of law is submitted on behalf of Plaintiff, Hazan Sports Management Group, Inc. ("HSM") in support of its motion for a default judgment pursuant to Fed. R. Civ. P. 55 (a).

## PRELIMINARY STATEMENT

Plaintiff, HSM, is entitled to default judgment against the Defendant Malik Beasley ("Beasley") because in the nearly four months since Beasley was personally served with the complaint and summons, he has failed to file an answer or even enter an appearance (either through counsel or on a pro se basis). In that span, the Plaintiff has been extraordinarily generous in entertaining settlement discussions intermediated by attorneys who do not actually represent Beasley in this matter but by their own account(s) were doing favors for Beasley or friends of Beasley, which have ultimately proven to be fruitless as a result of Defendant's apparent disinterest in making the Plaintiff an offer. Obtaining a default judgment against the Defendant is a last resort by the Plaintiff which has exhausted all other avenues to resolving this matter.

## FACTS

The Defendant, Beasley is a talented professional basketball player with a proverbial laundry list of well-documented issues that are wholly unrelated to his abilities on the court – ranging from financial issues to legal issues and seemingly everything in between. In spite of these issues (which included a four-month prison sentence as part of a plea agreement in Minnesota) and due in large part to an uncanny ability to shoot three pointers, Beasley has managed to grind out a nine-year professional career in the National Basketball Association ("NBA").

The Plaintiff, HSM, is a boutique international professional basketball agency,

representing both the on and off court interests of professional basketball players in the NBA and in professional leagues around the world. When HSM was introduced to Beasley in 2023, Beasley was attempting to resurrect a once promising career and sought the help of HSM to do just that. HSM elected to take a substantial financial and professional risk on a player with a checkered past and took on Beasley as a client in November of 2023. On or about November 27, 2023, the Parties entered into a "Player Marketing Agreement" (the "Marketing Agreement") that set forth the terms and conditions of HSM's exclusive representation of Beasley's marketing interests and the commercialization of his rights of publicity.

The Marketing Agreement was slated to span an initial term of four (4) years with a listed expiration date of November 27, 2027, during which Beasley was expressly prohibited from engaging with other individuals or organizations to serve as his marketing agent/representative. Additionally, as is customary in professional sports such as professional basketball, HSM provided Beasley with a cash advance against future marketing revenue/commission in the amount of $650,000 (the "Marketing Advance") in anticipation that Beasley's resurgence would repay the amount of the advance several-fold. Given the risk associated with a small agency like HSM taking a risk on a player like Beasley, the Parties agreed to include a liquidated damages provision of $1,000,000 in the event the Marketing Agreement was terminated for any reason.

After a respectable but underwhelming season as a member of the Milwaukee Bucks, HSM was able to secure Beasley a one-year contract with the Detroit Pistons worth $6,000,000 – more than twice the value of the contract his previous agents negotiated with Milwaukee ($2,700,000). In the midst of the career renaissance Beasley was experiencing in Detroit as a result of the efforts of HSM Beasley notified HSM on February 26th, 2025, that he had engaged

5

another agency Seros to represent his playing and marketing interests – a clear and flagrant breach of the exclusivity provisions of the Marketing Agreement.

Over the course of the following two months – at a time when Beasley was still earning a salary of half a million dollars per month – HSM made repeated attempts to recover the monies it advanced to Beasley with respect to the Marketing Advance as well as the monies it remitted to Beasley or expended on behalf of Beasley in furtherance of his professional basketball career such as training expenses, etc. However, HSM was met with little more than half-hearted empty promises to repay HSM eventually and sporadic insulting small dollar payments that represented little more than a "drop in the bucket" with respect to HSM being made whole.

HSM initiated the above captioned matter on April 20, 2025, and facilitated the personal service of the summons and complaint to Beasley while he was in New York to play against the New York Knicks in the opening round of the NBA playoffs on April 21, 2025. In the ensuing weeks and months, Beasley failed to answer the complaint or enter an appearance through counsel or on a pro-se basis. In mid-May, Beasley had his criminal defense attorney reach out to HSM to attempt to settle the matter as an intermediary while not actually representing Beasley. Based upon the representations made by the attorneys who attempted to intervene on Beasley's behalf and the reasonable expectation that Beasley would obtain employment with another NBA club, HSM elected to request multiple extensions of time by way of letter motions.

In between the first and second extensions of time to file, it was revealed by multiple media sources that Beasley is allegedly the subject of a federal criminal investigation regarding gambling on NBA games, all but ensuring that Beasley would not be playing in the NBA for the 2025-26 season. Prior to the filing of the second extension of time in July of this year, another

attorney entered the picture to act as an intermediary for the benefit of Beasley to resolve the matter. However, no material progress was made, as instead of attempting to make a good faith effort to resolve the matter by conveying a substantive offer to HSM, Beasley instead chose to take several island vacations, as well as a lavish trip to Europe, all of which he thoroughly documented on his social media accounts.

After expending far too much time, energy, and resources over the course of nearly four months without a tangible resolution to show for it, HSM was left with no other option but to file a motion for default judgment with this supporting memorandum of law.

**ARGUMENT**

**I.      This Court Has Subject Matter Jurisdiction With Respect to This Case and Personal Jurisdiction Over The Parties**

This court has subject matter jurisdiction with respect to this case on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332.

28 U.S.C. § 1332 reads in relevant part as follows:

> "*The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different States.[1]*"

> "*A corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…[2]*"

The Defendant, Beasley is a citizen of Michigan. The Plaintiff, HSM is a corporation incorporated under the laws of the State of New York with its principal place of business located in the State of New York – specifically the borough of Manhattan in New York

---

[1] 28 U.S.C. § 1332 (a) (1)
[2] 28 U.S.C. § 1332 (c) (1)

City. The amount in controversy totals over $2,000,000, well over the statutory minimum of $75,000 for cases whose subject matter jurisdiction is based upon diversity of citizenship. Therefore, this court has subject matter jurisdiction with respect to this case on the basis of diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332.

This court has personal jurisdiction over the parties because both parties consented to the jurisdiction of this court by means of the Marketing Agreement. Section 16 of the Marketing Agreement reads as follows:

> *This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of laws of any jurisdictions other than those of the State of New York. Any and all disputes arising out of this Agreement shall be adjudicated by a New York state court of competent jurisdiction located in New York County or a federal court located in New York County, New York. Each Party irrevocably waives any objection it may now or hereafter have with respect to venue of disputes arising out of or in connection with this Agreement. In the event Marketing Agent is required to pursue adjudication of its rights with respect to this Agreement, Player agrees to pay any and all legal fees associated with such adjudication. For purposes of this Agreement, adjudication shall be construed broadly to include the retention of an attorney by Marketing Agent regardless of whether formal adjudicative proceedings are initiated.*

According to Fed. R. Civ. P. (4)(k)(2)**: "Serving a summons or filing a waiver of service**

establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Given that this court is located in the State of New York, New York's rules pertaining to personal jurisdiction apply, specifically CPLR §302(a)(1) which reads as follows: "Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: transacts any business within the state or contracts anywhere to supply goods or services in the state;"

In this case, Defendant, Beasley transacts substantial business as he was the client of HSM, a New York corporation based in New York City and also regularly visits New York City for work to play road games against the New York Knicks and the Brooklyn Nets. Moreover, Beasley was personally served in Manhattan when he was in town with the Pistons to play the Knicks in the first round of the NBA playoffs. As such, given the plain language of the Marketing Agreement in conjunction with the fact that Beasley transacts substantial business in the State and City of New York, this court has personal jurisdiction over both Beasley and HSM.

## II.     New York Substantive Law Should Be Applied To This Case

It is well established that federal courts that have subject matter jurisdiction over a particular case on the basis of diversity of citizenship are compelled to apply the applicable substantive law of the state that governs the matter. 28 U.S.C. § 1652 reads as follows: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."

"As a matter of comity at least and by virtue of the Rules of Decision Act as well, the federal courts are bound to recognize an asserted rule of state law where the evidence in the form of state decisions is sufficiently conclusive, in other words, when the asserted rule is established with sufficient definiteness and finality." *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938).

In this case, the parties agreed by means of the Marketing Agreement that New York law Should govern and control with respect to any matters or disputes arising out of the Marketing Agreement. Section 16 of the Marketing Agreement reads in relevant part: "This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of laws of any jurisdictions other than those of the State of New York." There is no ambiguity as to the intent of the Parties to have New York law govern the Marketing Agreement and due to the fact that there is no federal common law as it relates to contractual disputes of this nature (or in general), New York law should control.

**III.    A Default Judgment Should Be Entered Against Beasley For His Failure To Appear**

According to Fed R. Civ. P. 4 (e) (2) (a), an individual "may be served in a judicial of the United States by… delivering a copy of the summons and of the complaint to the individual personally." As noted above, this case was initiated on April 20, 2025, and Beasley was personally served with the summons and complaint the following day (April 21) at the Ritz Carlton Nomad in Lower Manhattan when he and the Pistons were in town to play the New York Knicks at Madison Square Garden. The individual who served the defendant was not a party to the present case. Therefore, service of the defendant was proper.

Fed R. Civ. P. 55 (a) states: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." In this case, the Defendant has had nearly four months to enter an appearance since he was personally served on April 21 - and in that span not only has he failed to do so but he has also intentionally delayed the process by cashing in favors with various attorneys in his orbit to float the possibility of a settlement to give the Plaintiff reason to delay filing a motion for default judgment. Defendant's most recent attempt to delay the process caused the Plaintiff to wait an additional month with the expectation of an eventual offer that never came. While the Defendant was having his pro bono representative plead poverty on his behalf, he was taking lavish vacations that he documented on his various social media platforms.

Given that the Defendant has had ample time to enter an appearance and has deliberately delayed the judicial process by having others convey little more than vague general interest in a potential settlement, this court should enter a default judgment against the Defendant, Beasley.

IV. **Beasley Breached The Marketing Agreement By Engaging Brian Jungreis of Seros Partners To Serve As His Marketing Agent In Violation of The Exclusivity Provisions of The Marketing Agreement.**

The elements required to successfully assert a claim for breach contract in the State of New York are: 1) The existence of a valid contract; 2) the Plaintiff's performance of his obligations with respect to the contract; 3) the defendant's failure to perform or breach of their obligations, and 4) resulting damages. *Harris v. Seward Park Hous. Corp.*, 79 A.D.3d 425, 913 N.Y.S.2d 161 (App. Div. 2010)

In this case, Beasley engaged HSM to serve as his exclusive marketing agent with respect to the commercial exploitation of his marketing rights/rights of publicity by means of the Marketing Agreement dated November 27, 2023. Section 1(a) of the Marketing Agreement reads as follows:

*"Commencing as of the Effective Date, Player hereby appoints Marketing Agent as Player's sole and exclusive representative for the marketing or representation for any use of his attributes, including, but not limited to, his name, image, likeness, signature, voice, character and for personal appearances ( collectively "Rights of Publicity") throughout the world. Player agrees to provide Marketing Agent with a non-exclusive, sublicensable, royalty-free, paid-in-full license to Player's Rights of Publicity to make use of in connection with Marketing Agent's representation of Player. Marketing Agent shall be the sole and exclusive party authorized to develop, negotiate, organize and administer any and all income-producing activities available to Player for use of his Rights of Publicity, including but not limited, to licensing, endorsements, personal appearances, television, film, modeling and fashion, literary and musical activities, special events, multi-media and social media (hereinafter "Marketing Activities")."*

HSM dutifully fulfilled its contractual obligations as a marketing agent and player agent, which can be easily demonstrated by the fact that they were able to secure a playing contract worth double what Beasley earned the previous season. Moreover, HSM was so confident about its ability to turn around the career of a player with a less than savory image and track record that they advanced him an initial $650,000 against his future off the court earnings from the

commercialization of his marketing rights. HSM even doubled down on Beasley by advancing him additional money and covering certain expenses in order to enable him to focus on playing basketball. HSM even went as far as to act as the guarantor on the lease for Beasley's luxury Detroit apartment, which he recently defaulted on and owes over $21,000 in unpaid rent for which HSM is now legally responsible.

HSM even continued to attempt to secure off the court earning opportunities, which included an endorsement from a local Detroit area restaurant chain that never came to fruition because of Beasley's decision to breach the Marketing Agreement by engaging another agency, Seros Partners to serve as his marketing and player agents.

As previously noted and demonstrated by the plain text of the Marketing Agreement, HSM was to serve as Beasley's exclusive marketing agent for a period for an initial term of four (4) years. However, Beasley breached the exclusivity provisions of the Marketing Agreement by engaging Seros Partners as his marketing agent a little over a year into the initial term of the agreement, in spite of the undeniable success of the relationship up to that point in time.

The Marketing Agreement was subsequently terminated as a result of Beasley's breach of the exclusivity provisions. With respect to a "Termination Event," the Marketing Agreement provides in relevant part as follows:

> *Player acknowledges and accepts that if this Agreement is terminated for any reason (a "Termination Event") Player shall be required to pay the Marketing Agent liquidated damages in the amount of $1,000,000 (one million USD) (the "Liquidated Damages Amount") along with any marketing fees due and payable under this Agreement to the*

*Marketing Agent within thirty (30) days of such Termination Event without reduction for any*

*taxes withheld by the Marketing Agent upon its payment to Player of the Marketing Advance.*

*The Parties agree that the Liquidated Damages Amount is fair and acceptable in light of the*

*amount of the Marketing Advance and the risk assumed by Marketing Agent with respect to*

*the Marketing Advance."*

*"All expenses incurred by the Marketing Agent toward the execution of any Marketing*

*Activities or in general service of, to, or on behalf of Player shall be deemed to be an*

*additional advance by Marketing Agent and shall be recoverable by Marketing Agent if this*

*Agreement is terminated for any reason ("Expenses"). Nonetheless, if this Agreement is*

*terminated for any reason prior to the negotiation by Marketing Agent of any contract for the*

*Player that allows Marketing Agent to recoup the Marketing Advance and Expenses*

*identified herein, the Expenses incurred by Marketing Agent shall be added to the Liquidated*

*Damages Amount."*

The Marketing Agreement was terminated as a result of Beasley's breach of its exclusivity

provisions and as such, in accordance with its terms, Beasley is required to remit liquidated damages

to HSM in the amount of $1,000,000 plus any additional expenses incurred by HSM in general

service on behalf of Beasley. Due to Beasley's reckless and flagrant indifference for honoring his

financial obligations writ large and HSM's good faith surety of certain obligations, the total amount

of additional expenses (including attorney's fees) continues to mount. By HSM's calculation as of

the date of this memorandum of law (August 11, 2025), the additional expenses incurred by HSM

with respect to its representation of Beasley total $250,000.

Under New York law "A contractual provision fixing damages in the event of breach will be

sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation. If, however, the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced." *Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 393 N.Y.S.2d 365, 361 N.E.2d 1015 (1977).

In this case, HSM advanced Beasley approximately $900,000 against his future marketing revenue/endorsement earnings over the course of four years, which if not for utter lack of responsibility off the court and the news of the alleged federal criminal investigation, were likely to be substantial as Beasley had the best season of his career this past season and was a key contributor to an ascending playoff team. Upon information, belief, and media reports, Beasley was slated to enter into an additional playing contract with the Pistons that would have earned him $42,000,000 over the next three years. NBA players of Beasley's stature can routinely earn $500,000 to $1,000,000 plus per year from marketing/endorsement earnings. Thus, a liquidated damages provision of $1,000,000 for a four-year contract that includes additional expenses not only bears a reasonable proportion to the probable loss but is arguably a substantial underestimation of the probable loss stemming from Beasley's breach. Therefore, the measure of damages sought is fair and reasonable in light of Beasley's breach of the Marketing Agreement.

V. **Beasley Is Required to Pay HSM's Attorney's Fees Per The Terms of The Marketing Agreement**

Section 16 of the Marketing Agreement provides in relevant part: "In the event Marketing Agent is required to pursue adjudication of its rights with respect to this Agreement, Player agrees to pay any and all legal fees associated with such adjudication. For purposes of this Agreement, adjudication shall be construed broadly to include the retention of an attorney by Marketing Agent

15

regardless of whether formal adjudicative proceedings are initiated."

HSM engaged counsel to pursue adjudication and resolution of this matter in February 2025 and to date has incurred associated legal bills in excess of $75,000. The total amount of legal fees HSM has incurred with respect to the adjudication of this matter have increased as a result of Beasley's bad faith attempts to have third party attorneys (neither of which would represent Beasley in this matter) to float the possibility of a settlement with no actual intention of making HSM whole, as exemplified by the fact the most recent round of settlement conversations consumed an additional month without Beasley even making an offer of any kind.

If not for Beasley's breach of the Marketing Agreement and subsequent failure and refusal to repay HSM, HSM would not have incurred any attorney's fees with respect to this matter. Therefore, Beasley should be required to pay HSM's attorney's fees in accordance with the terms of the Marketing Agreement.

## VI.     An Inquest Is Unnecessary

Rule 55(b) of the Federal Rules of Civil Procedure provides that where a party has applied for a default judgment, the "[district] court may conduct hearings or make referrals" in order to, among other things, "determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter." Fed. R. Civ. P . 55 (b)(2)(B)-(D) (emphasis added).  It is "not necessary for the District Court to hold  a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment." *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2nd Cir. 1989).

In this case, the Marketing Agreement sets forth clear and unambiguous remedies in the event of a breach of the kind committed by Beasley, specifically the payment of liquidated

damages, which include expenses incurred by HSM in general service of Beasley as well as the reimbursement of attorney's fees associated with the adjudication of this matter. The accompanying affidavit of HSM's President, Daniel Hazan in conjunction with the text of the Marketing Agreement more than adequately establish the basis for the asserted damages.

As such, an inquest to ascertain whether there is sufficient basis for the damages sought in this case is unnecessary.

## CONCLUSION

Accordingly, Plaintiff, Hazan Sports Management Group, Inc. seeks default judgment against Defendant, Malik Beasley in the amount of $1,325,000 including pre-judgment interest and costs.

Dated: August 11, 2025

/s/ Daniel Marcus, Esq.

Daniel Marcus, Esq. (5664164)
Attorney for Plaintiff
82 Nassau Street
#62278
New York, New York 10038
Tel. 551-427-5069
Email: dan@hlgesq.com